If A. steals the goods of B. and sells them to C., B. may recover (268) the goods of C. before A. is convicted or acquitted of the felony; but if B. sells the goods to C. in market over, B. could not, at common law, recover the property either before or after the conviction of A., for the sale in market overt changed the property; in neither case, that is, either before or after the conviction, at common law, could B. recover them from A., the thief. If policy and not forfeiture occasioned the merger, why could B. sustain his action against C., where they were not sold in market overt, *Page 143 
and not against A.? Policy requires the conviction or acquittal of A. as much in the case where the goods are found in the possession of C. as when found in A.'s possession. If policy governed, the inducement to prosecute offenders should operate in both cases; there is as much necessity in the one case as the other. But at the common law there was no inducement to prosecute to a conviction, for before the statute of Hen. VIII the goods were lost to the owner upon a conviction; the former owner could not reclaim them even from the thief. It was his interest to prosecute, but not to convict. What had policy, then, to do with encouraging an honest prosecution? It was on the other side. But that statute repeals the common law in cases where the former owner aids in the prosecution by awarding a restitution; but the law of merger was in force long before the passing of this statute, and it is the influence of this statute which sustains the owner's right to the goods after a sale in market overt, for it gives restitution of the goods; it acts in rem on the thing, and annuls the common-law effect of a sale in market overt. By the statute of Hen. VIII the property is ordered to be restored to the owner who aids in the prosecution, and it is his whenever found and under whatever circumstances. Upon a conviction in an appeal of robbery, the appellant might obtain his goods if in the hands of the felon; but before the statute it affected not sales in market overt. The statute may since have been extended to convictions on appeal. I have not examined, nor is it necessary, in this case. (269) This is almost enough, if not quite, to prove that the law of merger is not founded on policy alone. But further, it is confined in its operation to cases of felony, that is, to cases of forfeiture; for all felonies amount to a forfeiture. Are there, then, no other crimes which the policy of the law forbids being compromised, or where inducements should not be held out for a prosecution? Forgery, perjury, every species of thecrimen falsi, heresy, which latter was punished with death? In none of these is there a merger. For what reasons are not some of them as atrocious as the lesser larcenies; for instance, petty larceny, or even the stealing above the value of twelve pence? Why, then, does the law of merger not prevail in that case? Because there is no forfeiture. When we see the law of merger invariably follow the law of forfeiture, as the shadow does the substance, and never find it where forfeiture is not, it is a strong reason to believe that it is founded upon it and grows out of it; for it is a maxim in most governments, at least, it is so in England, that where the rights of an individual conflict with the rights or claims of the sovereign, that the rights of the individual must give way; and as by forfeiture all the goods of a felon are forfeited to the king, even those which were the subject of the prosecution, and for the stealing of which he was *Page 144 
convicted, to sustain an action against him would impair the rights of the crown, as thereby the fund to be forfeited upon conviction would be lessened. If policy forbids the action, I should think it might be pleaded; and yet we find no such plea, for it appears to me that the maxim Nemo audiendus est suam turpitudinem allegare does not apply to such cases where policy forbids the act, for it is better that a man should shield himself by his own infamy than that the public policy should be violated. The manner in which it is got at shows that it forms no defense, that the sovereignty acts without regard to the defendant's benefit. If it appears in the (270) declaration, the defendant demurs; this is not offering this as a defense; it already appears; the demurrer calls the attention of the court to it. So if moved in arrest of judgment; but it is never pleaded. If it appears by the evidence on the trial, the court (that the rights of the crown may not be diminished) directs the jury to acquit the defendant. Upon the whole, I think that forfeiture, and not policy alone, gave rise to the doctrine of merger.
Whether the law of forfeiture is still in force, in cases where the State insists on such right, I think it is entirely unnecessary to decide. But I am not disposed to postpone doing justice to the plaintiff, in expectation that by so doing I shall impair the rights of the State by lessening the felon's estate, when the State comes to claim the forfeiture; for it would be a vain and fruitless expectation, for the State has not for at least half a century, and perhaps for a much longer time, in a single instance asserted that right. Therefore, I say, whatever may be her actual rights if she thought proper to enforce them, I cannot consent to delay doing justice to this plaintiff lest I should interfere with the claims of the State, when from the former consent of the State it is reduced to a moral certainty that no such claim will be asserted.
I do not think it necessary to give my opinion on the other point, to wit, that even if the rule of merger be founded on policy, enough has been done by the plaintiff in causing a bill of indictment to be preferred against the defendant, which the grand jury refused to find; but would observe that if in England an acquittal before the petit jury was required, such rule might not apply here; for there, if the Attorney-General will not prosecute or the grand jury will not find a bill, yet the person injured may still bring the offender before a petit jury by a prosecution entirely under his control, to wit, an appeal; and that the most rigorous policy could not require more in (271) either country than the utmost exertions of the injured party to bring the offender to justice. In this country the injured party's utmost efforts end with an honest exertion before the *Page 145 
Attorney-General or before the grand jury. In England more may be required of him, because there he can do more, a trial before a petit jury, for by his own act he can effect that. But for the reasons given in the foregoing part of this opinion, I think that the judgment of the court below should be reversed and judgment given for the plaintiff.
I am aware that Lord Ellenborough, in 12 East, founds the doctrine on policy. Whatever falls from that great judge deserves great weight; but it is mere dictum, not necessary to the decision of the case, it being an action brought to recover damages for an injury received by stabbing. The judge reported that it was within the statute, and therefore a felony, but the defendant had been acquitted; the question was, Could the action be sustained? It was adjudged that it could; for, let it be founded on forfeiture or policy, there was no merger; the acquittal barred future prosecutions, therefore, there could be no forfeiture. The policy of the law was complied with, for there had been a prosecution, and if not conducted with good faith, it might be shown. See 2 Term, 750, Harwood v.Smith.
Offenses made capital by statute, and not declared to be felonies, do not cause the trespass to merge, but where it is made a felony they do.
I think that judgment should be rendered for the plaintiff.
PER CURIAM. Reversed.